UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Nicole Harris Bey, | ) | C/A No. 4:24-939-JD-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| South Carolina Department of Social Services, Constance Leaks, Whitney Warren, and Melanie McMillian, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Proceeding pro se, Plaintiff Nicole Harris Bey (Plaintiff or Bey)[1] brought a Complaint in this court against South Carolina Department of Social Services (DSS), and individual Defendants, DSS employees Constance Leaks, Whitney Warren, and Melanie McMillian, concerning actions taken regarding the custody of Plaintiff's four minor children. Am. Compl., ECF No. 15. This matter is before the court on several motions: Defendants' Motion to File a Response Out of Time, ECF No. 35; Defendants' Motion to Dismiss, ECF No. 36; and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 45, which she filed in tandem with her opposition to Defendants' dispositive motion, ECF No. 44.[2] Having considered the Motions, responses, ECF Nos. 44, 47; reply, ECF No. 46, and applicable law, the undersigned

---

[1] Although the Complaint, Amended Complaint, and other filings list Nicole Harris Bey and Durelle El Bey as Plaintiffs, no filings have been signed by Durelle El Bey. Accordingly, this matter was served with Nicole Harris Bey as the only party-Plaintiff. *See* Serve Order, ECF No. 26. Durelle El Bey is not a party to this litigation.

[2] Plaintiff's August 23, 2024 filing is called her "Respon[se] to Defendant(s) Motion to Dismiss and Movant(s) Request for Judgment Pursuant to Fed Civ P. Rule 12(c)." This document is included in ECF twice: once as Plaintiff's Response to Defendants' Motion to Dismiss, ECF No. 44; and once as Plaintiff's Motion for Judgment on the Pleadings, ECF No. 45.

recommends[3] Defendants' Motion to File Out of Time, ECF No. 35, be granted; Defendants' Motion to Dismiss, ECF No. 36, be granted; Plaintiff's Motion for Judgment on the Pleadings, ECF No. 45, be denied; and this matter be ended.

I.      Background

Proceeding pro se, Plaintiff submitted a Complaint using the court's "Complaint for a Civil Case" form in January 2024. ECF No. 1. Plaintiff's initial 498-page submission included separate "Complaints" against each of the four named Defendants, as well as documents in support of the claims. ECF Nos. 1 through 1-9. After completing its initial review the court advised Plaintiff her initial Complaint was subject to summary dismissal and gave Plaintiff the opportunity to provide additional information. Order and Notice, ECF No. 11.

On May 1, 2024 the court received Plaintiff's 180-page Amended Complaint, ECF No. 15, which includes four separate but virtually identical "Deprivation of Rights Amended Complaint[s]" as to each named Defendant. Am. Compl., ECF No. 15. After Plaintiff provided service documents the court issued a Serve Order, and the Amended Complaint was served on June 14, 2024. *See* ECF Nos. 26, 31-34. The Amended Complaint, ECF No. 15, is the operative Complaint in this matter. Because Plaintiff and Defendants cite to records attached to ECF No. 1, such records are also considered when pertinent to the analysis.

II.     Facts and claims from Plaintiff's pleadings[4]

---

[3] Because Plaintiff is proceeding pro se, pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.). Because the pending Rule 12 motions are dispositive, the undersigned enters this Report for the district judge's consideration.

[4] As it must, the court considers material facts in the light most favorable to Plaintiff. The court acknowledges Plaintiff's current disagreement with actions taken in the underlying Family Court matter. However, the court will not disturb the findings of the Family Court. The factual recitation of what transpired in that matter is provided for completeness.

Plaintiff's allegations generally hinge on actions of DSS, through the Individual Defendants and through the Marlboro County (South Carolina) Family Court. Plaintiff begins her pleadings by indicating her affiliation with the "Moorish Divine and National Movement of the World," also sometimes known as the "sovereign citizen" movement. Plaintiff submits that this court "is the proper venue in order to resolve this civil family matter between members of the Indigenous Moorish American Nation and a citizen(s) of the Foreign UNITED STATES OF AMERICA Corporation." Am. Compl., ECF No. 15 at 2.[5] Plaintiff submits the Marlboro County Family Court "lacks authority as the alleged defendants (artificial persons) GABRIELLE WRIGHT and DARIAN WILLIAMS[6] do not have and have not held at any point in time a bona fid[e] contract implied or otherwise between the parties." *Id*. at 3. Plaintiff generally seems to allege violation of her Fourth and Fifth Amendment constitutional rights. Am. Compl., ECF No. 15 at 2-3. Plaintiff also references the "Treaty of Peace and Friendship Between Morocco and the United States." *Id*. at 7, 11-13.

Plaintiff claims on March 22, 2022, DSS caseworker McMillian came to her home and informed Plaintiff she was being investigated for child neglect. ECF No. 15-1 at 19. Plaintiff says she informed the caseworker that the child neglect allegations were being made in

---

[5] As noted above, Plaintiff's Amended Complaint is made up of four separate but almost identical "Deprivation of Rights Amended Complaints" as to each of the four Defendants. For convenience, the court generally cites to the first of such pleadings without repeating the citations for each separate pleading unless pertinent to the analysis.

[6] The Marlboro Family Court proceedings were brought by DSS against Gabrielle Wright and Darian Williams. *See, e.g.,* March 7, 2023 Order of Non-Emergency Removal (County of Marlboro Family Court 2022-DR-34-76, ECF No. 1-1 at 12-20 (copy provided by Plaintiff along with her initial Complaint); *see also* Am. Compl., ECF No. 15 at 4 (citing Order). *See Colonial Penn Ins. Co. v. Coll*, 887 F.2d 1236, 1239 (4th Cir. 1989) (finding court may take judicial notice of matters found in court filings). As explained in her original Complaint Nichole Harris Bey is the "authorized representative" of the "corporate construct Gabrielle Wright (Artificial Person)"; Durrell El Bey is the "authorized representative" of the "corporate construct Darian Williams (Artificial Person)." ECF No. 1-1 at 6.

retaliation for Plaintiff calling the police on her ex-family friend concerning the kidnapping of her daughter. *Id.* Plaintiff alleges the caseworker stated she still wanted to speak to Plaintiff's children. *Id.* at 19-20. Plaintiff states she told the caseworker she did not consent, and the caseworker left. *Id.* at 20.

Plaintiff alleges on April 11 and 14, 2022, DSS workers McMillian and Warren and Marlboro County Sheriff's officers came to her home and asked to speak to her children. *Id.* at 20. Plaintiff indicates that, when DSS and officers arrived on April 14, 2022, they advised her they had obtained an Inspection Warrant to enter the premises. *Id.* (citing "Exhibit B," a reference to "Exhibit B" to the original Complaint, ECF No. 1-1 at 62-71). The Inspection Warrant, signed by Family Court Judge Mindy W. Zimmerman on April 13, 2022, determined there was "probable cause to believe that [Plaintiff's] children may be abused and/or neglected children." Inspection Warrant 2, ECF No. 1-1 at 66. The Warrant order recounted allegations of neglect and noted Plaintiff was pregnant with twins. *Id.* at 65. The Warrant authorized DSS to interview the children, inspect the condition of the children and premises, review appropriate records, and ordered that a "duly authorized law enforcement officer" accompany DSS to conduct the inspection. *Id.* at 66. When DSS and law enforcement went to Plaintiff's home on April 14, 2022, she advised she would not be allowing them in, she did not waive her "right to any unlawful searches" and did not consent to them seeing her children. ECF No. 15 at 21. They left, but told Plaintiff they would return. *Id.* Plaintiff claims she sent the parties a cease-and-desist letter on April 21. *Id.* at 21.

Plaintiff alleges DSS workers and law enforcement returned to her home on April 28 to do an inspection. *Id.* Plaintiff claims on April 28, 2022, McMillian was an accessory with Leaks in attempting to execute an improper warrant in violation of the Fourth and Fifth Amendments.

4

ECF No. 15-1 at 16. Plaintiff claims McMillian assisted "fellow DSS agents" in kidnapping her children, first in a parking lot, and then in her home. *Id.* Plaintiff states she asked DSS to leave, indicating she had not seen appropriate identification. *Id.* at 22. The DSS workers refused to leave, and officers had to be called to the house to make them leave. *Id.* at 21-22. Plaintiff says later that day she went to the Marlboro County Magistrate's office to file a complaint against DSS, and while she was there DSS workers and officers from the Marlboro County Sheriff's office approached her vehicle. *Id.* at 22. Plaintiff says she was walking back to the car with her five-year-old daughter when a DSS official grabbed her daughter, and Plaintiff was arrested because an officer said he smelled marijuana burning in her car. *Id.* at 23. Plaintiff claims that after she was released from custody later that evening she learned DSS had unlawfully entered her home and taken custody of her 10-month-old, and that both children were placed in foster care. *Id.* at 24.

An emergency hearing was set for May 2, 2022. *Id.* Plaintiff indicated she attempted to introduce some documents (drug test, police report, and hospital records) at the hearing; however, the prosecutor indicated she was not permitted to use the documents. *Id.* at 25. Plaintiff claims that on May 2, 2022, McMillian committed perjury for the purpose of kidnapping Plaintiff's children. *Id.* at 16. Following the emergency hearing, SCDSS retained custody of Plaintiff's children, and Plaintiff was ordered to submit to a drug test. *Id.* at 26-27. Plaintiff says she gave birth to twins on May 9[7] in North Carolina; on May 11, DSS came to her hospital room and took her twins. *Id.* at 27. Plaintiff claims Leaks' May 11, 2022 request to the court caused the kidnapping of Plaintiff's newborn twin daughters from the hospital. *Id.* at 16. Plaintiff

---

[7] Although the Amended Complaint indicates the twins were born in May 2020, ECF No. 15-1 at 27, the explained sequence of events and other documents, *e.g.*, ECF No. 1-1 at 12, indicate they were born May 9, 2022.

submits Warren was an "accessory" with fellow DSS agents. *Id.* at 17. Plaintiff says both she and the twins had negative drug screens at the time the twins were taken into DSS custody. *Id.*; *see also* May 20, 2022 DSS Determination Fact Sheet and Notice of Unfounded Investigations/Assessments, ECF No. 44-1 at 1, 9, also available at ECF No. 1-1 at 86-87 (indicating investigation begun on May 10, 2022 was unfounded as "It was determined that the agency is already involved with the family, as the minor twins were already ordered into DSS custody, prior to Gabrielle [Plaintiff in this matter] giving birth. The children had negative drug screenings and their chord screenings are pending.").

On January 4, 2023, South Carolina Family Court Judge Salley H. McIntyre presided over the Merits Hearing in the DSS matter against Wright [Plaintiff here] and Williams and in the interests of the four minor children born November 21, 2016, June 22, 2021, and May 9, 2022. Order of Non-Emergency Removal, ECF No. 1-1 at 12-20. Judge McIntyre's March 7, 2023 Order indicated both Wright and Williams were represented by counsel and a guardian ad litem appeared for Wright, Williams, and maternal grandmother Donna Locklear. *Id.* at 12. The parties entered into an agreement of a finding of "Physical Neglect by Gabrielle Wright" as to the children; permanent custody of all four children was granted to maternal grandmother Locklear; visitation and telephone contact was granted to Wright; Wright was granted access to educational and medical information; and no contact was to take place between the children and Williams without further court order. *Id.* The Order of Non-Emergency Removal stated the agreement had been entered pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), and that Wright "makes absolutely no admission of any kind[,]" but "acknowledges that there exists evidence from which, should this case have proceeded to conclusion, the Court would likely find a preponderance of the evidence in favor of [DSS's] position[.]" *Id.* at 14. The court found the

parties fully understood the agreement, were satisfied with their attorneys, were entering the agreement freely and voluntarily, and understood they had the "right to a trial in the matter, but wish[ed] to proceed with the agreement instead[.]" *Id.* The Order of Non-Emergency Removal has not been appealed and is the law of the case. *See* ECF No. 36 at 4 n.4, ECF No. 47 at 7.[8]

Reiterating her claims that Defendants and others falsified information in their dealings with Plaintiff as to proceedings concerning her minor children, ECF No. 15-1 at 33-38, Plaintiff alleges "charges" against Defendants, claiming they are "liable for the infringements for the rights and international law protection, are in violation of genocide, kidnapping and involuntary servitude[.]" *Id.* at 38. Plaintiff references 18 U.S.C. § 1091 (criminal statute concerning "genocide"), 18 U.S.C. § 1590 (criminal statute concerning "trafficking with respect to peonage, slavery, involuntary servitude, or forced labor"); and 18 U.S.C. § 1201 (criminal statute regarding kidnapping and conspiracy). *Id.* at 39-40. Plaintiff references 42 U.S.C. § 1983, characterizing it as requiring states to "provide prevention of, and effective remedies for all infringements of Indigenous rights and give due consideration to the customs, traditions, and legal systems of the indigenous peoples." *Id.* at 40. Plaintiff notes Section 1983 permits civil actions for deprivation of "rights, privileges, or immunities secured by the Constitution and laws[.]" *Id.* Plaintiff seeks relief in the form of a judgment of $43,500,000.00, the return of her four children, the firing of Leaks, Warren, and McMillian, and "injuncti[ve] relief for irreparable damage on behalf of this private Moorish American community." *Id.* at 44.

III.     Defendants' Motion for Leave to File Responsive Pleading Out of Time, ECF No. 35

On the same day they filed their answer, ECF No. 37, and Motion to Dismiss, ECF No. 36, Defendants moved for leave to file such responsive pleadings out of time, ECF No. 35. One

---

[8] Defendants note the Order of Non-Emergency Removal was not appealed, *see* ECF No. 36 at 4 n.4, ECF No. 47 at 7; Plaintiff does not claim otherwise.

7

of the grounds for relief sought[9] is a finding that Defendants be permitted to file their answer and dispositive motion one day after the "traditional time for them to file responsive pleadings" as expired because they have shown the requisite excusable neglect as contemplated by Federal Rule of Civil Procedure 6(b)(1)(B). Mot. for Leave 3.

In considering Defendants' Rule 6 request that the responsive- pleading deadline be extended by one day,[10] the court considers "the danger of prejudice to the [opposing party], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Agnew v. United Leasing Corp.*, 680 F. App'x 149, 155 (4th Cir. 2017). Defendants point out that Plaintiff is not prejudiced by a one-day delay in the response and the case has just begun. No scheduling order has yet been issued. Further, defense counsel explained there had been some confusion as to the date of service and counsel-assignment. Upon realizing the oversight, counsel drafted the responsive pleadings. Mot. for Leave 4. Defendants have established excusable neglect. Their Motion for Leave to File, ECF No. 35, should be granted.[11]

---

[9] Defendants also argue they were not properly served with the Amended Complaint because it was signed not by Plaintiff but by "Maurice Bey," who does not appear to be licensed counsel. While Defendants are correct that pro se parties such as Plaintiff cannot be represented by non-licensed attorneys as their "representatives," the court notes the original Complaint was signed by Plaintiff Nichole Bey and that Nichole Bey also has now provided copies of the Amended Complaint that plainly include her signature. *See* ECF Nos. 1 and 44-2 at 49. Based on the court's finding that Defendants have demonstrated excusable neglect that makes their July 9, 2024 Answer and Motion to Dismiss considered as timely filed, no further discussion of the service/signature issue is required at this time.

[10] The Motion for Leave is not dispositive and could be ruled on by the undersigned without the need for providing a recommendation. However, because this Motion is being considered in conjunction with dispositive motions it is included as a recommendation herein.

[11] Plaintiff did not submit a response to Defendants' Motion for Leave to File Responsive Pleadings Out of Time. The court does note, though, that that several of the attachments to Plaintiff's opposition to Defendant's Motion to Dismiss, also nominated Plaintiff's own

IV. Dispositive motions

Defendants filed a Rule 12(b)(6) Motion to Dismiss. ECF No. 36. Plaintiff filed a response to that Motion, which is also styled as a "Request for Judgment Pursuant to Fed Civ P. Rule 12(c)." *See* ECF No. 44 (response), ECF No. 45 (Motion for Judgment on the Pleadings).[1]

A. Pro se filings

As always, the court construes pro se filings in the light most favorable to her. However, it is not the court's place to create arguments for a pro se litigant. *See Waiters v. Hous. Auth. of Florence*, No. 4:21-CV-02527-JD-KDW, 2023 WL 2815320, at *6 (D.S.C. Jan. 30, 2023) (noting the court "is not required to make arguments for any party, including those proceeding pro se, nor is it required to review documents submitted with no context. The court is not charged with combing through the record to make arguments for any party. Judges 'are not like pigs, hunting for truffles buried in briefs. Similarly, it is not our job to wade through the record and make arguments for either party.'" (quoting *Hensley on behalf of N.C. v. Price*, 876 F.3d 573, 581 n.5 (4th Cir. 2017)); *report and recommendation adopted,* No. 4:21-CV-02527-JD, 2023 WL 2569455 (D.S.C. Mar. 20, 2023).

B. Standards of review

1. Defendants' Motion to Dismiss, ECF No. 36

---

[1] "Request for Judgment on the Pleadings," include what appear to be requests for entry of default because Defendants filed their responsive pleading one day after the deadline. *See, e.g.,* ECF No. ECF No. 44-2 at 4-5. Based on the recommended approval of Defendants' request for a one-day extension of the deadline for responding, Defendants' Answer and Motion to Dismiss are to be deemed timely filed, and any request for default submitted by Plaintiff should be denied. *See Butler v. United States*, No. 5:20-CV-480-BO, 2021 WL 1095306, at *1 (E.D.N.C. Mar. 22, 2021) (denying request for entry of default when court had found excusable neglect and permitted defendant to file responsive pleading out of time). Furthermore, nothing in Plaintiff's filings indicates she would be unduly prejudiced if default were not entered at this early juncture in the proceedings. Alternatively, should the district judge be inclined to have default entered, Defendants' Motion for Leave to File Out of Time could be considered a request for relief of entry of any such default and should be granted in that instance, as well.

9

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Typically, the court measures the legal sufficiency by determining whether the complaint meets the Rule 8 standards for a pleading. *Id.* The Supreme Court considered the issue of well-pleaded allegations, explaining the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)). When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). The court is also to "'draw all reasonable inferences in favor of the plaintiff.'" *Kolon Indus.*, 637 F.3d at 440 (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). Although a court must accept all *facts* alleged in the complaint as true, this is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citation omitted). While legal conclusions can provide the framework of a complaint, factual allegations must support the complaint for it to survive a motion to dismiss. *Id.* at 679. Therefore, a pleading that provides only "labels and conclusions" or "naked assertion[s]" lacking "some further factual enhancement" will not satisfy the requisite

10

pleading standard. *Twombly,* 550 U.S. at 555, 557. Further, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). At bottom, the court is mindful that a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Ct. of Apps.,* 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks omitted).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). The court may consider such a document, even if it is not attached to the complaint, if the document "was integral to and explicitly relied on in the complaint," and there is no authenticity challenge. *Id.* at 448 (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). *See also Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 622 (D.S.C. 2011) ("In evaluating a motion to dismiss under Rule 12(b)(6), the Court . . . may also 'consider documents attached to . . . the motion to dismiss, so long as they are integral to the complaint and authentic.'") (quoting *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).

2. Motion for Judgment on the Pleadings, (included by Plaintiff as part of her opposition to Motion to Dismiss, ECF Nos. 44-45)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court reviews a motion for judgment on the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.,* 278 F.3d 401, 405–06 (4th Cir.2002); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th

Cir.1999). "Rule 12(c) motions 'dispose of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further.'" *Green v. West*, No. CV 2:19-00366-RMG, 2020 WL 473638, at *1–2 (D.S.C. Jan. 17, 2020) (quoting *Lewis v. Excel Mech., LLC*, 2:13-CV-281-PMD, 2013 WL 4585873 at * 1 (D.S.C. Aug. 28, 2013) (internal quotation omitted)). A judgment on the pleadings should be granted only if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Lewis,* 2013 WL 4585873 at * 2 (citation omitted).

The court notes it is unusual for a litigant to both oppose a motion to dismiss and to seek her own judgment on the pleadings at the same time. Given Plaintiff's pro se status and that the Motion to Dismiss and Motion for Judgment on the Pleadings raise essentially the same legal points, the court considers the motions jointly to the extent appropriate.

C. Analysis

1. Plaintiff's "Moorish-American" or "Sovereign Citizen" status does not confer special bases for jurisdiction

As an initial matter, the court notes that Plaintiff's claim to be a Moorish American does not confer upon her any special bases for jurisdiction herein. "The law is clear that Moorish Americans, like all citizens of the United States, are subject to the laws of the jurisdiction in which they reside." *See Jones-El v. South Carolina*, No. 5:13-cv-1851-JMC, 2014 WL 958302, at *8 (D.S.C. Mar. 11, 2014) (collecting cases); *see also El-Bey v. North Carolina*, No. 5:11-cv-423-FL, 2012 WL 368374, at *2 (E.D.N.C. Jan. 9, 2012) ("[A]ny claim based on the contention that Plaintiffs are not subject to the laws of [the state] because of their alleged Moorish nationality and the Treaty of Peace and Friendship of 1787 is frivolous."), *adopted*, 2012 WL 368369 (E.D.N.C. Feb. 3, 2012).

12

2. Plaintiff's 42 U.S.C. § 1983 claims are subject to dismissal

At bottom, Plaintiff's case is about her disagreement with the Family Court's ruling granting permanent custody to her mother. Defendants seek dismissal as a matter of law, arguing Plaintiff's claims amount to an impermissible collateral attack on the Family Court's final Order. In their Motion to Dismiss, Defendants note Plaintiff entered an *Alford* plea concerning a finding of neglect and the Family Court's Order of Non-Emergency Removal is a final Order. ECF No. 36 at 3-4 (submitting the review sought is the same type of review prohibited by *Heck v. Humphrey*, 512 U.S. 477, 484-85 (1994)). *Heck* held that a federal court may not entertain a state prisoner's claim for monetary damages brought pursuant to 42 U.S.C. § 1983 "if that suit's success would necessarily undermine the legality of his conviction or confinement, unless the prisoner has first 'invalidated' the legality of his confinement." *Brunson v. Stein*, __ F.4th __, No. 22-7228, 2024 WL 4194151, at *1 (4th Cir. Sept. 16, 2024) (quoting *Heck*, 512 U.S. at 486-87).

Plaintiff opposes the Motion to Dismiss but only tangentially addresses Defendants' argument that Plaintiff's acceptance of a finding of neglect through an *Alford* plea is tantamount to impermissibly looking behind the validity of the Family Court's final order under principles similar to those set forth in *Heck*. Instead, Plaintiff seems to fashion an argument attacking the Family Court's Order and the *Alford* plea itself, submitting that "Defendants fail to satisfy the required elements" required for an *Alford* plea. ECF No. 44 at 9-11.

Plaintiff submits the Marlboro County Court is a "PRIVATE FAMILY COURT and never established proper jurisdiction[,]"presiding Family Court Judge Salley H. McIntyre is "NOT AN ARTICLE 3 JUDGE" for the United States, all parties present were aware of

"Movants['] Moorish American Status," Judge McIntyre "ignored DSS investigation findings," and the *Alford* Plea "fails from its inception." ECF No. 44 at 9.

None of Plaintiff's jurisdiction-focused arguments is availing. Plaintiff has not demonstrated lack of authority by the Family Court or Judge McIntyre. To the extent Plaintiff argues her due-process rights have been violated, she has not demonstrated such violations that would invalidate the entire Family Court process, including her own admission of neglect as to all four of her minor children. Plaintiff's myopic focus on the "Unfounded Report" status as to the twins born in May 2022 ignores the bigger picture, including the earlier finding of probable cause by the Family Court, *see* Inspection Warrant 2, ECF No. 1-1 at 65-66 (recounting allegations of neglect and noting Plaintiff was pregnant with twins); and the notation in the "Unfounded Report" that no new investigation was required because DSS already had an ongoing, pending investigation, *see* ECF No. 1-1 at 86-87 (indicating investigation begun on May 10, 2022 was unfounded as "It was determined that the agency is already involved with the family, as the minor twins were already ordered into DSS custody, prior to Gabrielle [Plaintiff in this matter] giving birth. The children had negative drug screenings and their chord screenings are pending.").

Plaintiff would now prefer that the findings of the Family Court had been different. However, probable cause had been found. *See White by White v. Chambliss*, 112 F.3d 731, 735–36 (4th Cir. 1997) (noting constitutionality of South Carolina law permitting removal of children when "there is probable cause to believe that by reason of abuse or neglect there exists an imminent danger to the child's life or physical safety." S.C. Code § 20–7–610(F)(2); *see also* S.C. Code § 20–7–610(A)(1)). Plaintiff entered into an agreement and consented to the jurisdiction of the Family Court at the January 2023 hearing, after which Judge McIntyre entered

14

the Order of Non-Emergency Removal, making the agreement between Plaintiff and DSS part of that final court order. Order of Non-Emergency Removal, ECF No. 1-1 at 12-20. As part of that Order Judge McIntyre noted she had questioned the parties and was satisfied they "understand they have the right to a trial of the matter, but wish to proceed with the agreement instead[.]" *Id.* at 14. At bottom, Plaintiff simply has not presented any actionable claim of a violation of a constitutional right.

Defendants also argue that this case should be dismissed based on the *Rooker-Feldman* doctrine because the relief Plaintiff seeks would serve to attack the validity of the Family Court's custody determination. ECF No. 47 at 7-8. The undersigned agrees that this doctrine requires this matter be dismissed. This court will not look behind final, unappealed orders of the family court in this matter. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) (holding that a federal district court lacks authority to review final determinations of state or local courts); *Jordahl v. Democratic Party*, 122 F.3d 192, 199 (4th Cir. 1997). This prohibition on review of orders or findings made in connection with state court proceedings is implicated when to rule in favor of a plaintiff would necessarily require the federal court to overrule, or otherwise find invalid, various orders, rulings, and findings made in connection with the state court proceedings. *See Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293–94, (2005); *see also Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) ("*Exxon* requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself."). "'[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Brown &*

*Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). Thus, "if in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual, *Rooker-Feldman* is implicated." *Jordahl*, 122 F.3d at 202 (internal punctuation omitted) (quoting *Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)). Because federal jurisdiction to review the decisions of state courts "is reserved exclusively to the Supreme Court, it is improper for federal district courts to exercise jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment." *Ernst*, 108 F.3d at 491.

Here, Plaintiff requests money damages as the result of various alleged violations of Plaintiff's constitutional rights. Further, she requests that the Family Court's custody ruling be invalidated so that the four children can be returned to her. *See* ECF No. 15-1 at 44. The court cannot grant the requested relief because the *Rooker-Feldman* doctrine precludes this court's exercise of jurisdiction over Plaintiff's claims. *See Guion v. Marsh*, No. 6:18-CV-1609-DCC-JDA, 2018 WL 8300524, at *3–5 (D.S.C. Sept. 19, 2018) (collecting cases; declining to exercise jurisdiction, dismissing claim based on *Rooker-Feldman* doctrine, finding the relief sought would "challenge the rulings made by the Family Court judge, including the judge's determinations concerning the testimony and/or evidence that was utilized at the Family Court hearings and the judge's orders concerning custody."); *report and recommendation adopted,* No. 6:18-CV-01609-DCC, 2019 WL 1771736 (D.S.C. Apr. 23, 2019), *aff'd sub nom. Glenn v. Marsh*, 806 F. App'x 252 (4th Cir. 2020).

Plaintiff did not file a Reply in response to Defendants' response to the Motion for Judgment on the Pleadings in which the *Rooker-Feldman* doctrine is discussed. Based on the

clear import of this doctrine, the undersigned is aware of no successful argument Plaintiff could make that would suggest a potentially different recommendation.

Here, were Plaintiff's requested relief to be granted by this court, it would necessarily—and improperly—require that this court overrule or find invalid the Family Court's rulings. Defendants' Motion to Dismiss should be granted. For the same reasons, Plaintiff's Motion for Judgment on the Pleadings should be denied.

3.  Other arguments

Based on the above recommendations, other arguments need not be considered in detail. The court notes that Plaintiff cannot pursue remedies under criminal statutes in this civil court.

V.  Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' Motion to File Out of Time, ECF No. 35, be granted; Defendants' Motion to Dismiss, ECF No. 36, be granted; Plaintiff's Motion for Judgment on the Pleadings, ECF No. 45, be denied; and this matter be ended.

IT IS SO RECOMMENDED.

October 4, 2024                                        Kaymani D. West
Florence, South Carolina                               United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**